UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CAVAZOS, CDCR #J-26206,<br><br>Plaintiff,<br><br>vs.<br><br>GARILASO, et al.,<br><br>Defendant. | Case No.: 3:21-cv-1156-JAH-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING MOTIONS TO PROCEED IN FORMA PAUPERIS [ECF Nos. 12, 17];**<br><br>**(2) DISMISSING FIRST AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)(1);**<br><br>**(3) GRANTING MOTION TO AMEND [ECF No. 25]; AND**<br><br>**(4) DENYING MOTION TO ADD DEFENDANTS AS MOOT [ECF No. 16]** |

## I. Procedural History

On June 21, 2021, Robert Cavazos ("Plaintiff"), an inmate currently incarcerated at Richard J. Donovan Correctional Facility ("RJD"), filed a civil rights action ("Compl.")

pursuant to 42 U.S.C. § 1983 in the Northern District of California. (ECF No. 1.) Plaintiff has also filed two Motions to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF Nos. 12, 17.)

On June 22, 2021, United States Magistrate Judge Laurel Beeler determined that venue was proper in the Southern District of California and transferred the matter to this Court. (ECF No. 9.) After the matter was transferred, Plaintiff filed an "Amendment Supplement to Complaint" which the Court liberally construes as a supplement to his Complaint. (ECF No. 14.) In addition, Plaintiff also filed a document entitled "Amendment to Defendants John and Jane Does; Requesting venue change of transfer to original filing Northern District." (ECF No. 16.)

However, before the Court could conduct the required screening, Plaintiff filed a "Motion to Amend Complaint" and submitted a proposed First Amended Complaint. (ECF No. 25.) The Court GRANTS Plaintiff's Motion to Amend and will direct the Clerk of Court to file Plaintiff's First Amended Complaint ("FAC") which is now the operative pleading. Because Plaintiff's FAC[1] supersedes his previous filings, the Court DENIES Plaintiff's Motion to Add Defendants as moot. (ECF No. 16)

## II.  Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed

---

[1] The Court's review of the issues raised herein will address the FAC.
[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 30, 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

His trust account statement shows Plaintiff has carried an average monthly balance of $65.29 and average monthly deposits of $112.90 over the 6-month period immediately preceding the filing of his Complaint, and an available balance of 101.07 on the books at the time of filing.

Based on this accounting, the Court **GRANTS** Plaintiff's Motions to Proceed IFP (ECF Nos. 12, 17) and assesses an initial partial filing fee of $22.58 pursuant to 28 U.S.C. § 1915(b)(1). However, this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 577 U.S. at 86; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts

as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of Plaintiff and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**III.   Sua Sponte Screening per 28 U.S.C. § 1915(e)(2) and § 1915A**

   A.   Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his FAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for

relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>Rule 8</u>

Plaintiff's FAC contains rambling allegations against fifty-one (51) named defendants and forty-four John Doe defendants and is over forty (40) pages long with over a hundred (100) exhibits. (*See* generally FAC, ECF No. 25-1.) "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). *See Iqbal*, 556 U.S. at 677-78. In addition to the grounds for sua sponte dismissal set out in § 1915(e)(2)(B), the district court may also dismiss a complaint for failure to comply with Rule 8 if it fails to provide the defendant fair notice of the wrongs allegedly committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178–80 (9th Cir. 1996) (upholding Rule 8(a) dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling," while noting that "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations.").

Plaintiff's entire FAC must be dismissed for failing to comply with Rule 8.

/ / /
/ / /
/ / /
/ / /

C. <u>Factual Allegations</u>[3]

Plaintiff was transferred to RJD on December 18, 2018.  (*See* FAC at 20.)  In late January 2019, Defendant Brieves allegedly threatened Plaintiff telling him "be quiet, you seen nothing, don't repeat what you did in Lancaster or else what you just seen will happen to you." (*Id.* at 21.)

On February 1, 2019, Plaintiff was approached by two inmates who told him "staff said you are a big snitch from Lancaster and a stalker." (*Id.*)  He claims these inmates "made aggressive moves" towards him but fled when Plaintiff "brandish[ed] a weapon (knife)." (*Id.*)  Plaintiff asked Defendant Trejo to be placed in segregation but Trejo said "no, you fight like a gladiator, you don't do what you did in Lancaster and leave our women alone." (*Id.*)

Plaintiff further claims he was told by other inmates that Defendant Gonzalez told inmates to "get" him "outside of the building, not inside" because she did not want "blood inside the building floor." (*Id.*)  That same evening, Plaintiff was "surrounded by a dozen inmates who impeded" him from entering his building. (*Id.*)  Plaintiff ran from these inmates and claims Gonzalez "was observing this scene [but] failed to deliberately protect" and "said nothing." (*Id.*)  Plaintiff claims these inmates "punched and stab[ed] Plaintiff on back of head" and with "closed fist struct Plaintiff" in his face and back. (*Id.* at 22.)  Plaintiff pulled out a "shank" and "chased inmates for 10 seconds." (*Id.*)  Defendant Garilaso "decided to activate the alarm to quell the surprise melee." (*Id.*)

From February 2, 2019 until April 25, 2019, Plaintiff "remained in segregation." (*Id.*)  Plaintiff was "escorted by Defendant Marcus Lopez" whom he claimed, "slightly roughed [him] up" by squeezing his upper arm and "having the handcuffs on super painfully tight." (*Id.*)  Plaintiff alleges Lopez told him that he would "not get your Ad-

---

[3] These factual allegations are those set forth in Plaintiff's FAC as to RJD only.  While Plaintiff sets forth factual allegations regarding incidents at other prisons, those claims lack proper venue in this Court for the reasons set forth below.

Seg allowable property" and Lopez said, "where we come from we don't stalk women, besides you killed a woman." (*Id.*)

Plaintiff "sat in the same room as Warden Covell and Associate Warden Armenta" who purportedly acknowledged watching the surveillance video of the "melee assault on Plaintiff." (*Id.* at 23.) Covell and Armenta are alleged to have "ridiculed Plaintiff for running several times from the inmates" and "pressuring Plaintiff to keep [the] code of silence and to "get with a program of respecting all staff." (*Id.*)

Plaintiff later asked for a cell move but was told by Defendant Luchaga "no cell move for stalker of women, so just deal with your cellmate." (*Id.*) Plaintiff "requested assistance outside of dining hall" and was placed in handcuffs and "sent to see Defendant Sergeant Ryan in the program office." (*Id.*) The cell move was "granted in the late evening hours." (*Id.*) Plaintiff claims Defendant Luchaga told him that he should "body slam" Plaintiff. (*Id.*)

Plaintiff alleges that in "late or early February 2020," Defendant Briones "violently" handcuffed him "at his cell entrance." (*Id.*) He claims Briones "lifted his arms high, grabbing his rear shoulder area and pushed him into lower B shower." (*Id.*) Plaintiff claims Briones took this action because Plaintiff had "refused to share [a] cell with an inmate assigned there for 2 hours." (*Id.*)

Plaintiff alleges that Defendant Falcon came to his cell on February 12, 2020, and handcuffed him. (*Id.* at 24.) He further claims Falcon tugged on his arm, twisted his wrist and forcefully held [his] hand down" while saying "you're an ass, you're not going to get your transfer out of RJD." (*Id.*)

Plaintiff was sent by RJD medical personnel to Tri-City Medical Center. (*See id.* at 25.) Plaintiff claims a Tri-City nurse "attempted to convince" Plaintiff that he needed to have a procedure because he had "abnormalities" with his heart. (*Id.*) However, Plaintiff refused to allow them to perform the "exploration medical procedure." (*Id.* at 26.) Plaintiff alleges that his "trip to Tri-City Medical Center was a plot conspiracy orchestrated by correctional officers and medical personnel at RJD prison" in order for

them to perform this procedure that would introduce "intestinal bacteria" leading to the "death of Plaintiff." (*Id.*)

Plaintiff claims he mailed a petition for writ of habeas corpus to the San Diego Superior Court on May 11, 2021. (*Id.* at 38.) However, the petition was denied because it was found that there were "no supporting documents to support claim." (*Id.*) Plaintiff alleges RJD personnel opened his mail and "discarded the supporting documents." (*Id.* at 39.)

Plaintiff seeks $2,000,000 in compensatory damages from each Defendant, $1,000,000 in punitive damages from each Defendant, declaratory relief, and injunctive relief in the form of "immediate release of Plaintiff from custody, vacating his case conviction in the interest of justice." (*Id.* at 41.)

     D.    <u>Statute of Limitations</u>

As an initial matter, the Court finds that many of Plaintiff's claims, alleged to arise at RJD beginning in early 2019, are subject to sua sponte dismissal for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(b)(1) because they are time-barred.

"A claim may be dismissed [for failing to state a claim] on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "'A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. U.S.,* 68 F.3d 1204, 1206 (9th Cir. 1995)); *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1276-77 (9th Cir. 1993) (where the running of the statute of limitations is apparent on the face of a complaint, dismissal for failure to state a claim is proper, so long as Plaintiff is provided an opportunity to amend in order to allege facts which, if proved, might support tolling); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764,

788 (9th Cir. 2000) (court may raise the defense of statute of limitations sua sponte).

Section 1983 contains no specific statute of limitation; therefore, federal courts apply the forum state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). Before 2003, California's statute of limitations was one year. *Jones*, 393 F.3d at 927. Effective January 1, 2003, the limitations period was extended to two. *Id.* (citing CAL. CIV. PROC. CODE § 335.1). The law of the forum state also governs tolling. *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989)); *Jones*, 393 F.3d at 927 (where the federal court borrows the state statute of limitation, the federal court also borrows all applicable provisions for tolling the limitations period found in state law).

Under California law, the statute of limitations for prisoners serving less than a life sentence is tolled for an additional two years. CAL. CIV. PROC. CODE § 352.1(a); *Johnson v. California*, 207 F.3d 650, 654 (9th Cir. 2000), *overruled on other grounds*, 543 U.S. 499 (2005). However, Plaintiff is currently serving a sentence of life without the possibility of parole ("LWOP") and therefore, is not entitled to the additional two years of tolling.[4]

Unlike the length of the limitations period, however, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388; *Hardin*, 490 U.S. at 543-44 (federal law governs when a § 1983 cause of action accrues). "Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitation begins to run, when the wrongful act or omission results in damages." *Wallace*, 549 U.S. at 391. Put another way, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955; *TwoRivers v. Lewis*, 174

---

[4] *See* CDCR Inmate Locator, https:\\www.inmatelocator.cdcr.ca.gov (website last visited September 28, 2021.)

F.3d 987, 991 (9th Cir. 1999).

In this case, some of the "wrongful acts" alleged to have been taken against Plaintiff at RJD occurred two years before he filed his initial Complaint on June 4, 2021, and thus, are outside California's statute of limitations. The Court concludes Plaintiff had "reason to know" of many of his claims as early as January of 2019, more than two years before he filed this case on June 4, 2021, and after the limitations period applicable to his claims elapsed. *See Maldonado*, 370 F.3d at 955.

Finally, Plaintiff's claims could be considered timely if, in his pleading, he alleged facts sufficient to show the limitations period may be equitably tolled. *See Cervantes*, 5 F.3d at 1276-77. Generally, federal courts also apply the forum state's law regarding equitable tolling. *Fink*, 192 F.3d at 914; *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988). Under California law, however, Plaintiff must meet three conditions to equitably toll the statute of limitations: (1) he must have diligently pursued his claim; (2) his situation must be the product of forces beyond his control; and (3) Defendants must not be prejudiced by the application of equitable tolling. *See Hull v. Central Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1335 (Cal. Ct. App. 1994); *Addison v. State of California*, 21 Cal.3d 313, 316-17 (Cal. 1978); *Fink*, 192 F.3d at 916.

As currently pleaded, however, the Court finds Plaintiff has failed to plead any facts which, if proved, would support any plausible claim for equitable tolling. *See Cervantes*, 5 F.3d at 1277; *Iqbal*, 556 U.S. at 679. Accordingly, the Court finds that because it is clear from the face of Plaintiff's FAC, his claims beginning in January of 2019 through May of 2019 are barred by the statute of limitations, and thus, those claims are subject to sua sponte dismissal for failing to state a claim upon which section 1983 relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

/ / /

/ / /

/ / /

### E. Eighth Amendment Excessive Force Claims

Plaintiff claims Defendant Briones "violently" handcuffed him and "pushed him." (FAC at 23.) He also claims Defendant Falcon "tugged on his arm" and "twisted his wrist" when he handcuffed him. (*Id.* at 24.) Where excessive force is alleged, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 10 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). In order to violate the Eighth Amendment, the Defendant must use force which is "unnecessary" and "wanton." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In determining whether a defendant has used excessive force in the prison context, the Court considers the following factors: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; (4) the threat "reasonably perceived by the responsible officials"; and (5) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321). Here, Plaintiff fails to allege that he suffered any injury as a result of being handcuffed or pushed. Thus, the Court finds that he fails to state an Eighth Amendment excessive force claim against either Defendant.

### D. Access to Courts

Plaintiff alleges that unnamed RJD prison officials removed documents from a legal mailing he submitted to the San Diego Superior Court. (*See* FAC at 38.) As a result, Plaintiff alleges that his petition for writ of habeas corpus was denied. Prisoners have a constitutional right of access to the courts. (*See id.*) *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), limited in part on other grounds by *Lewis*, 518 U.S. at 354. In order to state a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional

requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348 (citation and internal quotations omitted). The right of access does not require the State to "enable the prisoner to discover grievances," or even to "litigate effectively once in court." *Id*. at 354; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Instead, *Lewis* holds:

> [T]he injury requirement is not satisfied by just any type of frustrated legal claim . . .. *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id*. at 346; *see also Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *2-3 (E.D. Cal. Mar. 6, 2017). Indeed, the failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (stating that "[f]ailure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

In addition to alleging an "actual injury," Plaintiff must also plead facts sufficient to describe the "non-frivolous" or "arguable" nature of the underlying claim he contends was lost as result of Defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id*. at 417.

Plaintiff's FAC has failed to allege the actual injury required to state an access to courts claim. *See Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. Specifically, Plaintiff has not provided the Court with the "nature and description" of the claims he brought in an action, nor the "non-frivolous" or "arguable" nature of those claims.

*Harbury*, 536 U.S. at 413-14. Thus, the Court finds that Plaintiff's FAC fails to include sufficient "factual matter" to show how or why any of the individual Defendants in this case caused him to suffer any "actual prejudice" "such as the inability to meet a filing deadline or to present a claim," with respect to any case. *Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936; Iqbal, 556 U.S. at 678. Because Plaintiff has failed to allege facts sufficient to show that any Defendant caused him to suffer any "actual injury" with respect to any non-frivolous direct criminal appeal, habeas petition, or civil rights action he may have filed, *see Lewis*, 518 U.S. at 354, the Court finds Plaintiff's access to courts claims must be dismissed for failing to state a plausible claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### E.   Frivolous claims

The Court finds that Plaintiff claims that there was a conspiracy between RJD prison officials and medical personnel at Tri-City Medical Center to have him undergo a medical procedure so that he would be infected with a bacteria in order to "lead to the death of Plaintiff" are frivolous.  (FAC at 27.)

A pleading is "factual[ly] frivolous[]" if "the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 25-26 (1992).

"[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. . . . [The] term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). When determining whether a complaint is frivolous, the court need not accept the allegations as true, but must "pierce the veil of the complaint's factual allegations," *Id.* at 327, to determine whether they are "'fanciful,' 'fantastic,' [or] 'delusional,'" *Denton*, 504 U.S. at 33 (quoting *Neitzke*, 490 U.S. at 328).

Here, the Court finds that Plaintiff's claims "rise to the level of the irrational or the wholly incredible," *Denton,* 504 U.S. at 33, and as such, these conspiracy claims require

dismissal as frivolous and without leave to amend. *See Lopez v. Smith* 203 F.3d 1122, 1127 n.8 (9th Cir. 2000) (en banc) (noting that if a claim is classified as frivolous, "there is by definition no merit to the underlying action and so no reason to grant leave to amend.").

### F. Habeas claims

In this matter, Plaintiff seeks "immediate release of Plaintiff from custody" and to have his criminal conviction "vacated." (FAC at 41.) However, he cannot seek this relief pursuant to § 1983. Such a claim would challenge "the validity of [his] continued incarceration [and therefore] lie within 'the heart of habeas corpus.'" *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003)(quoting *Preiser v. Rodriguez*, 411 U.S. 475, 98-99 (1973) (holding that a writ of habeas corpus is "explicitly and historically designed" to provide a state prisoner with the "exclusive" means to "attack the validity of his confinement" in federal court)).

### G. Misjoinder

Plaintiff seeks to bring claims arising in prisons he was housed in prior to RJD. Federal Rule of Civil Procedure 20 provides that a plaintiff may bring claims against several defendants in the same action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." *See* Fed. R. Civ. P. 20(a)(2)(A)-(B).

Plaintiff's FAC does not plausibly allege that his claims against Defendants Medina, Parra, Cano, Marquez, Martinez, Castellano, Rodriguez, Arnet, Fulton, and John Does 1 through 18 arose out of the "same transaction, occurrence, or series of transactions or occurrences" that occurred later at RJD. *See id.* Accordingly, the Court finds that these claims are misjoined and therefore are governed by Rule 21. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Under Rule 21, when the Court finds misjoinder, "on its own," the Court may "drop a party" or "sever any claim against a party." *See* Fed. R. Civ. P. 21. The Court therefore severs Plaintiff's claims

against Defendants Medina, Parra, Cano, Marquez, Martinez, Castellano, Rodriguez, Arnet, Fulton, and John Does 1 through 18 from this action and directs the Clerk of the Court to terminate Defendants Medina, Parra, Cano, Marquez, Martinez, Castellano, Rodriguez, Arnet, Fulton, and John Does 1 through 18 as parties. Plaintiff may, if he chooses, pursue these claims by filing a separate action against Defendant Medina, Parra, Cano, Marquez, Martinez, Castellano, Rodriguez, Arnet, Fulton, and John Does 1 through 18 in the proper venue. However, because all of the claims against these misjoined defendants predate the 2019 RJD claims they may be subject to the same statute of limitations and may be dismissed on those grounds.

## IV.   Conclusion

Good cause appearing, the Court:

1.   **GRANTS** Plaintiff's Motions to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF Nos. 12, 17).

2.   **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's trust account the $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3.   **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4.   **GRANTS** Plaintiff's Motion to Amend Complaint [ECF No. 25]. The Clerk of Court is directed to file Plaintiff's proposed First Amended Complaint [ECF NO. 25-2] as Plaintiff's First Amended Complaint.

5.   **DENIES** Plaintiff's Motion to Amend Defendants [ECF No. 16] as moot.

///
///
///

///

///

6. **DISMISSES** Defendants Medina, Parra, Cano, Marquez, Martinez, Castellano, Rodriguez, Arnet, Fulton, and John Does 1 through 18 pursuant to Federal Rule of Civil Procedure 21 and without prejudice to re-filing in a separate action in the proper venue.  The Court further **DIRECTS** the Clerk of the Court to terminate Defendants Medina, Parra, Cano, Marquez, Martinez, Castellano, Rodriguez, Arnet, Fulton, and John Does 1 through 18 as parties to this action.

7. **DISMISSES** Plaintiff's FAC for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) and for failing to comply with Federal Rule of Civil Procedure 8;

8. **GRANTS** Plaintiff 45 days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted, if he can. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

Plaintiff's Amended Complaint, should he elect to file one, must be captioned as

his "First Amended Complaint," contain S.D. Cal. Civil Case No. 21cv1156 JAH (AHG) in it caption, and comply both with FED. R. CIV. P. 8 and with S.D. CAL. CIVLR 8.2.a. The Court **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for Plaintiff's use and to assist him in complying with LR 8.2.a's requirements. Plaintiff is also informed that he must comply with the Court's Local Rule 8.2 which requires the use of the Court's form Complaint, and permits additional pages "not to exceed fifteen (15)."

    **IT IS SO ORDERED**.

Dated: November 2, 2021

Hon. John A. Houston
United States District Judge